UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDRICH COUSINS P.C. 401(k)
Profit Sharing Plan & Trust,
Individually and on Behalf of All Others
Similarly Situated,

Civil Action No.   12-cv-4131-RWS

Plaintiff,

vs.

FACEBOOK, INC., MARK
ZUCKERBERG, DAVID A.
EBERSMAN, DAVID M. SPILLANE,
MARC L. ANDREESEN, ERSKINE B.
BOWLES, JAMES W. BREYER,
DONALD E. GRAHAM, REED
HASTINGS, PETER THIEL,
MORGAN STANLEY & CO. LLC; J.P.
MORGAN SECURITIES LLC; and
GOLDMAN SACHS & CO.,

Defendants.

CLASS ACTION

COMPLAINT FOR VIOLATION
OF THE FEDERAL SECURITIES
LAW

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased

Facebook Inc. ("Facebook" or the "Company") common stock pursuant and/or

traceable to a false and misleading registration statement and prospectus

(collectively, the "Registration Statement") issued in connection with the

Company's May 18, 2012 initial public offering (the "Offering" or the "IPO").

2.     This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against Facebook, certain officers and directors of Facebook, and the lead investment banks which underwrote the May 2012 Offering (collectively, "Defendants").

3.     Facebook operates as a social networking company worldwide.  The Company was founded in 2004, is incorporated in Delaware, and is headquartered in Menlo Park, California.

4.     On May 18, 2012, Defendants consummated the Offering pursuant to the false and misleading Registration Statement and Prospectus, selling 421,233,615 shares at $38 per share, for proceeds of over *$16 billion*.  The Company's audited financial statements for the years ending December 31, 2010 and December 31, 2011 were incorporated into the Registration Statement by reference.

5.     The Registration Statement contained a wide number of Facebook's critical metrics, including (i) "monthly active users" or "MAUs" (901 million); (ii) "daily active users" or "DAUs" (526 million); (iii) "Likes and Comments" (3.2 billion per day); and "friend connections" (125 billion).  Further, the Registration Statement noted increasing trends in each of the Company's key metrics – MAUs and DAUs.

2

6.      MAUs and DAUs are critical metrics for the Company, which generates its revenue largely via online advertising.  As set forth in the Prospectus: "Growth in MAUs, DAUs, and Mobile MAUs. Growth trends in MAUs, DAUs, and mobile MAUs are critical variables that affect our revenue and financial results by influencing the number of ads we are able to show, the value of those ads, the volume of Payments transactions, as well as our expenses and capital expenditures." Id. at 52.

7.      On May 22, 2012, - days after the IPO - Reuters' Alistair Barr reported that Facebook's lead underwriters, defendants Morgan Stanley, JP Morgan, and Goldman Sachs all had previously cut their earnings forecasts for Facebook – *in the middle of the IPO roadshow*.  Significantly, news of the estimate cuts was passed on to only a handful of big investor clients, not everyone else who was considering an investment in Facebook.

8.      Earnings forecasts are material information, especially when prepared by analysts with access to company management.  As lead underwriters on the IPO, these analysts would have had much better information about the Company than anyone else.  So the fact that these analysts all cut their forecasts at the same time, during the roadshow, coupled with the fact that this information was not passed on to the broader market, renders the Registration Statement materially false and misleading.  Selective dissemination of material information which was omitted

3

from the Registration Statement constitutes a violation of the federal securities laws.

9.    The true facts that were omitted from the Registration Statement include:

(a)    The Company's lead underwriters suddenly, and simultaneously, cut their earnings forecasts for Facebook;

(b)    The reduced earnings forecast was made in the middle of the IPO roadshow;

(c)    The lead underwriters selectively disclosed the reduced earnings forecasts to only a handful of big investor clients; and

(d)    The metrics included in the Registration Statement were materially false and misleading.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to §§11 and 12(a)(2) of the Securities Act of 1933 (the "1933 Act") [15 U.S.C. §§77k, 77l(a)(2) and 77o].

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

12.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants conduct business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

13.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff Goldrich Cousins P.C. 401(k) Profit Sharing Plan & Trust is a retirement trust for which Steve Goldrich, a resident of Skokie, Illinois, is Trustee. Mr. Goldrich acquired Facebook common stock (NASDAQ: FB) pursuant or traceable to the Offering and has been damaged thereby.

15.    Defendant Facebook operates as a social networking company worldwide. The company builds tools that enable users to connect, share, discover, and communicate with each other; enables developers to build social applications on Facebook or to integrate their Websites with Facebook; and offers products that enable advertisers and marketers to engage with its users. The company was founded in 2004 and is headquartered in Menlo Park, California.

16.     Defendant Mark Zuckerberg is the Founder, Chairman, and Chief Executive Officer of Facebook.  Zuckerberg signed the materially false and misleading Registration Statement.

17.     Defendant David A. Ebersman is the Chief Financial Officer of Facebook.  Ebersman signed the materially false and misleading Registration Statement.

18.     Defendant David M. Spillane is the Chief Accounting Officer of Facebook.  Spillane signed the materially false and misleading Registration Statement.

19.     Defendant Marc L. Andreesen is a Director of Facebook.  Andreesen signed the materially false and misleading Registration Statement.

20.     Defendant Erskine B. Bowles is a Director of Facebook.  Bowles signed the materially false and misleading Registration Statement.

21.     Defendant James W. Breyer is a Director of Facebook.  Breyer  signed the materially false and misleading Registration Statement.

22.     Defendant Donald E. Graham is a Director of Facebook.  Graham signed the materially false and misleading Registration Statement.

23.     Defendant Reed Hastings is a Director of Facebook.  Hastings signed the materially false and misleading Registration Statement.

6

24.     Defendant Peter A. Thiel is a Director of Facebook.  Thiel signed the materially false and misleading Registration Statement.

25.     The defendants referenced above in ¶¶16-24 are referred to herein as the "Individual Defendants."

26.     Defendant Morgan Stanley is a financial holding company which provides various financial products and services to corporations, governments, financial institutions, and individuals worldwide.  Morgan Stanley's principal place of business is 1585 Broadway, New York, NY 10036.  Morgan Stanley was the lead underwriter of the IPO.

27.     Defendant JP Morgan is a financial holding company providing various financial services worldwide.  JP Morgan's principal place of business is 270 Park Avenue, New York, NY 10017.

28.     Defendant Goldman Sachs provides investment banking, securities, and investment management services, as well as a range of financial services to corporations, financial institutions, governments and high-net worth individuals worldwide.  Goldman Sach's principal place of business is 200 West Street, New York, NY, 10282.

29.     Pursuant to the 1933 Act, the defendants referenced in ¶¶26-28 above are referred to herein as the "Underwriter Defendants."

30.     The Underwriter Defendants are liable for the false and misleading statements in, and omissions from, the Registration Statement.  In connection with the Offering, the Underwriter Defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

31.     The Registration Statement was filed with the SEC on Form S-8.

32.     The Registration Statement specifically incorporated audited financial statements and the Prospectus by reference.  *See* Part II, Item 3, incorporating:

> (a)     the Registrant's prospectus filed on May 18, 2012 pursuant to Rule 424(b) under the Securities Act relating to the Registration Statement on Form S-1, as amended (File No. 333-179287), which contains audited financial statements for the Registrant's latest fiscal year for which such statements have been filed; and
>
> (b)     the description of the Registrant's Class A common stock contained in the Registrant's Registration Statement on Form 8-A (File No. 001-35551) filed with the Commission on May 14, 2012 under Section 12(b) of the Exchange Act, including any amendments or reports filed for the purpose of updating such description.

33.     The Registration Statement further provides that the Registrant will: "reflect in the prospectus any facts or events arising after the effective date of the Registration Statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the Registration Statement."  Part II, Item 9.

34.     The Prospectus represents that Facebook's critical metrics are trending upwards.  For instance, the Prospectus states:

Monthly Active Users (MAUs). We define a monthly active user as a registered Facebook user who logged in and visited Facebook through our website or a mobile device, or took an action to share content or activity with his or her Facebook friends or connections via a third-party website that is integrated with Facebook, in the last 30 days as of the date of measurement.

MAUs are a measure of the size of our global active user community, which has grown substantially in the past several years. As of March 31, 2012, we had 901 million MAUs, an increase of 33% from March 31, 2011. We experienced growth across different geographies, with users in Brazil, India, and the United States representing key sources of growth. We had 45 million MAUs in Brazil as of March 31, 2012, an increase of 180% from the same period in the prior year, and we had 51 million MAUs in India as of March 31, 2012, an increase of 107% from the same period in the prior year. Additionally, we had 169 million MAUs in the United States as of March 31, 2012, an increase of 15% from the same period in the prior year.

Id. at 48.

35.     Similarly, the Prospectus touts growing DAUs:

Daily Active Users (DAUs). We define a daily active user as a registered Facebook user who logged in and visited Facebook through our website or a mobile device, or took an action to share content or activity with his or her Facebook friends or connections via a third-party website that is integrated with Facebook, on a given day. We view DAUs, and DAUs as a percentage of MAUs, as measures of user engagement.  Worldwide DAUs increased 41% to 526 million on average during March 2012 from 372 million during March 2011. We experienced growth in DAUs across major markets including the United States, Brazil, and India. Increased mobile usage was a key contributor to this growth. DAUs as a percentage of MAUs increased from 55% in March 2011 to 58% in March 2012, which we believe was driven entirely by increased mobile usage of Facebook. We believe that increases in DAUs and in DAUs as a percentage of MAUs generally positively affect our revenue because increases in user engagement may enable us to deliver more relevant commercial content to our users and may provide us with more opportunities for monetization.

Id. at 49.

36.     With respect to revenue growth, the Prospectus stated as follows:

2011 Compared to 2010:  Revenue in 2011 increased $1,737 million, or 88% compared to 2010. The increase was due primarily to a 69% increase in advertising revenue to $3,154 million. Advertising revenue grew due to a 42% increase in the number of ads delivered and an 18% increase in the average price per ad delivered. The increase in ads delivered was driven primarily by user growth; MAUs grew 39% from December 31, 2010 to December 31, 2011 and average DAUs grew 48% from December 2010 to December 2011. The number of ads delivered was also affected by many other factors including product changes that significantly increased the number of ads on many Facebook pages beginning in the fourth quarter of 2010, partially offset by an increase in usage of our mobile products, where we did not show ads, and by various product changes implemented in 2011 that in aggregate modestly reduced the number of ads on certain pages. The increase in average price per ad delivered was affected by factors including improvements in our ability to deliver more relevant ads to users and product changes that contributed to higher user interaction with the ads by increasing their relative prominence.

Id. at 61.

37.     With respect to the Offering Price, the Prospectus stated:

In early May 2012, in consultation with the underwriters, we determined the anticipated initial public offering price range to be $28.00 to $35.00 per share.  Subsequently, in mid-May 2012 we increased the anticipated initial public offering price range to $34.00 to $38.00 per share. The assumptions supporting the revised anticipated initial public offering price range represented management's best estimates and discussions between us and the underwriters about indications of interest from potential investors after approximately one week of marketing of the offering, and involved complex and subjective judgments.

Id. at 79.

38.     The Registration Statement/Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.  Specifically, the true facts that were omitted from the Registration Statement include:

(a)     The Company's lead underwriters suddenly, and simultaneously, cut their earnings forecasts for Facebook;

(b)     The reduced earnings forecast was made in the middle of the IPO roadshow;

(c)     The lead underwriters selectively disclosed the reduced earnings forecasts to only a handful of big investor clients; and

(d)     The metrics included in the Registration Statement were materially false and misleading.

## POST-OFFERING EVENTS

39.     The materially false and misleading information in the Registration Statement, coupled with the selective disclosure of reduced forecasts, had a predictable effect.  A swift decline in the price of Facebook stock.

40.     The materially false and misleading information caused a swell of demand for Facebook stock – prompting Facebook to increase the number of shares

being sold in the IPO by 25% to 421.2 million, and to raise its asking price to a range of $34 - $38 from $28 - $35.

41.     However, just days before Facebook raised the size and price of its IPO, the Company told its underwriters to lower their sales forecasts – during the roadshow.  The underwriter defendants only selectively disclosed their updated forecasts.

42.     Facebook shares closed on May 18, 2012 at just over the offering price of $38, as Morgan Stanley was forced to step in and buy shares to support the price.

43.     This was short-lived however, as Facebook shares promptly dropped 11% on the next trading day.  On May 22, 2012, Facebook stock closed at just $31 per share – representing an 18.4% decline from the IPO price of $38 just days prior.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired Facebook common stock pursuant or traceable to the Company's false and misleading Registration Statement for the Offering and who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of defendants, and, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants or Facebook have or had a controlling interest.

45.    The members of the Class are so numerous such that joinder of all members is impracticable.  The securities were actively traded on the NASDAQ under the symbol "FB".  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified and notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

47.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:  whether the 1933 Act was violated by defendants' acts as alleged herein; whether statements

made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Facebook; and to what extent the members of the Class have sustained damages and the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of Section 11 of the 1933 Act

50.     Plaintiff repeats and realleges each and every allegation contained above.  For purposes of this Court, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

51.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

52.    The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.    The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

54.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

55.    By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

56.    Plaintiff acquired the securities pursuant and/or traceable to the Registration Statement for the Offering.

57.    Plaintiff and the Class have sustained damages.  At the time of their purchases of the securities, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based and the time plaintiff filed this complaint.  Less

15

than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

## Violations of Section 12(a)(2) of the 1933 Act

58.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

59.    By means of the defective Prospectus, the defendants named herein assisted in the sale of shares of the securities to plaintiff and other members of the Class.

60.    The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants named herein owed plaintiff and the other members of the Class who purchased the securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

16

Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

61.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiffs acquired the securities.

62.     By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased the securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the securities.  Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein.  Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT III

### Violations of Section 15 of the 1933 Act
### Against the Individual Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above.  For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

17

64.    This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

65.    Each of the Individual Defendants was a control person of Facebook by virtue of his or her position as a director and/or senior officer which allowed each of these defendants to exercise control over Facebook and its operations.

66.    Each of the Individual Defendants was a culpable participant in the violation of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as Class Representative;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Such equitable/injunctive or other relief deemed appropriate by the

Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated:  May 23, 2012

By: _____

**HARWOOD FEFFER LLP**
Robert I. Harwood
Daniella Quitt
Peter W. Overs, Jr.
488 Madison Avenue, 8th Floor
New York, NY 10022
Tel: (212)-935-7400


**BERGER & MONTAGUE, P.C**
Todd S. Collins
Douglas M. Risen
Robin Switzenbaum
1622 Locust Street
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4636

**ANN MILLER, LLC**
Ann Miller
303 York Road
Jenkintown, PA 19046
(215) 238-0468

**THE LAW OFFICES OF DANIEL HARRIS**
Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802


Attorneys for Plaintiff

20

## FACEBOOK, INC.

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

Goldrich Cousins P.C. 401k Profit Sharing Plan & Trust ("Plaintiff"), hereby duly swears and says, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the draft complaint against Facebook, Inc., Morgan Stanley & Co. LLC, and others, approves of its contents, and authorizes his selected counsel, Berger & Montague, P.C., to represent him in this action, including filing a complaint and a lead plaintiff petition on his behalf.

2.     Plaintiff did not purchase the security that is the subject of the complaint at the direction of his counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's transactions in the security that is the subject of the complaint during the class period alleged in the complaint are as follows:

| Number of Shares of Common Stock Held | Date of Purchase | Price per Share |
|---|---|---|
| 1000 | 5/18/2012 | $38.00 |

5.     Plaintiff has not sought to serve or served as a representative party on behalf of a class under the United States federal securities laws during the three (3) years preceding the date on which this certification is signed.

6.     Plaintiff has not accepted and will not accept any payment for serving as representative party on behalf of the class beyond his *pro rata* share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this _23_ day of May, 2012.

By:  _____